## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LUCIRA HEALTH, INC.,[1] | Case No. 23-10242 (MFW) |
| Debtor. | **Re: Docket Nos. 16, 18, 182** |

## ORDER (A) AUTHORIZING AND APPROVING THE DEBTOR'S ENTRY INTO THE PURCHASE AGREEMENT, (B) APPROVING THE BACKUP BIDDER AND APPROVING AND AUTHORIZING THE NEXT-HIGHEST BID, (C) AUTHORIZING THE SALE OF THE ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACTS, AND (D) GRANTING RELATED RELIEF

Upon the motion dated February 22, 2023 [Docket No. 16] (the "Motion") of Lucira Health, Inc. (the "Debtor"), as debtor and debtor-in-possession in the above-captioned case (the "Chapter 11 Case"), pursuant to sections 105, 363, and 365 of title 11 of chapter 11 of the United States Code, §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of, among other things, (i) an order [Docket No. 182] (the "Bidding Procedures Order")[2] (a) approving the bidding procedures (the "Bidding Procedures") in connection with the sale or sales (the "Sale") of all or substantially all of the Debtor's assets, or any portion thereof (collectively, the "Assets"),

---

[1] The Debtor and the last four digits of its federal taxpayer identification number are: Lucira Health, Inc. (1037). The Debtor's mailing address is 1315 63rd St., Emeryville, CA 94608.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order [Docket No. 182] or the Purchase Agreement (as defined below), as applicable or as context requires.

(b) authorizing, but not directing, the Debtor to designate the Stalking Horse Bidder and approving the Bid Protections in accordance with the Bidding Procedures, (c) scheduling an auction (the "Auction") and sale hearing (the "Sale Hearing") and approving the form and manner of notice thereof, and (d) establishing certain assumption and assignment procedures and approving the manner of notice thereof, and (ii) an order (a) authorizing and approving the Debtor's entry into an asset purchase agreement with the Successful Bidder(s) or Next-Highest Bidder(s), (b) authorizing the Sale of the Assets to the party or parties that are the Successful Bidder(s) or Next-Highest Bidder(s) at the Auction, free and clear of all liens, claims, encumbrances and interests, except for certain assumed liabilities, (c) authorizing and approving the assumption and assignment of certain executory contracts in connection with the Sale, including proposed cure amounts (if any), and (d) granting related relief; and the Debtor having executed (a) that certain Asset Purchase Agreement by and between the Debtor and Pfizer Inc. (the "Buyer"), dated as of April 12, 2023, as amended in that certain Amendment to Asset Purchase Agreement dated as of April 18, 2023 (the "Amendment") (as may be further amended or modified from time to time in accordance with the terms thereof and this Order, together with the exhibits and schedules thereto, and the Amendment, the "Purchase Agreement"), attached hereto (excluding Seller's Disclosure Schedules) respectively as **Exhibits 1 and 2**, contemplating the Sale of the Assets identified therein as the "Transferred Assets" free and clear of any Liens, other than Permitted Liens, the assumption of those contracts of the Debtor identified therein (the "Assigned Contracts"), and assignment of the Assigned Contracts to Buyer (collectively, the "Sale Transaction"); and this Court having entered the Bidding Procedures Order on March 27, 2023; and the Auction having been held on April 6, 2023, in accordance with the Bidding Procedures, and continued in open Court on April 14, 2023; and the Debtor having selected the Buyer as the Successful Bidder and Pearsanta, Inc.

(the "Backup Buyer") as the Next-Highest Bidder, as reflected in the Notice of Auction Results in Connection with the Sale of the Debtor's Assets dated April 6, 2023 [Docket No. 221] and this Order; and the Sale Hearing having been held on April 13, 2023 and April 14, 2023; and this Court having determined at the Sale Hearing to re-open the Auction; and this Court having reviewed and considered the relief sought in the Motion, the Purchase Agreement, the last bid of the Successful Bidder made in open court on April 14, 2023 and the last bid of the Backup Buyer made in open court on April 14, 2023 (the "Next-Highest Bid"), all objections to the Motion and the arguments of counsel made and the evidence proffered or adduced at the Sale Hearing; and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Transaction and the relief requested in this Order; and due and sufficient notice of the Sale Hearing and the relief sought therein and this Order having been given under the particular circumstances of the Chapter 11 Case and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and all objections to the Sale and this Order having been withdrawn, resolved or overruled; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest; and it appearing that this Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, the First Day Declaration, the Declaration of Alexander Brandtneris in Support of the Motion [Docket No. 18] (the "Brandtneris Declaration") and the Declaration of Jeffrey Nerland in Support of the Sale of the Debtor's Assets  [Docket No. 247] (the "Nerland Declaration," and together with the Brandtneris Declaration, the "Sale Declarations"), and at the Sale Hearing, establish just cause for the relief granted herein; and after due deliberation thereon,

**THIS COURT HEREBY FINDS AND DETERMINES THAT:[3]**

A.    **Jurisdiction and Venue.** This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case and proceeding is proper in this District and this Court under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates.** The statutory predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code.  Such relief is also warranted pursuant to Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006 and Local Rules 2002-1 and 6004-1.

C.    **Final Order.** This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Order.

D.    **Notice.** On February 22, 2023 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[3]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Since the Petition Date, the Debtor has continued to operate and manage its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.      On March 7, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 84].

F.      The Debtor gave due and proper notice of the proposed Sale, Auction, and Sale Hearing on March 27, 2023 [Docket No. 184] (the "Sale Notice"). The Sale Notice constituted good, sufficient, and appropriate notice of the Sale under the particular circumstances and no further notice need be given with respect to the proposed Sale. As provided by the Sale Notice, a reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities. Other parties interested in bidding on the Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid.

G.      The Debtor also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtor and assigned to the Buyer to each non-debtor party under each such executory contract or unexpired lease as reflected on the notice of potential assumption and assignment of the Assigned Contracts, filed on March 28, 2023 [Docket No. 187] (the "Assumption and Assignment Notice"). Such notice was good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assigned Contracts are hereby deemed to consent to the relief granted herein, unless otherwise provided in this Order.

H.      As evidenced by the affidavits of service [Docket Nos. 53, 186, 206, 209, 216, 217] previously filed with this Court, and based on the representations of counsel at the Sale Hearing,

due, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the Purchase Agreement, this Order, and the Sale Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9006, 9007, and 9014, and Local Rules 2002-1 and 6004-1.   The Debtor has complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Cure Costs, the assumption and assignment of the Assigned Contracts, the Purchase Agreement, the Next-Highest Bid, this Order, and the Sale Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the Purchase Agreement, this Order, or the Sale Transaction is or shall be required.

I.       A reasonable opportunity to object or be heard regarding the relief requested in the Motion and provided in this Order was afforded to all parties in interest.

J.       **Compliance with the Bidding Procedures Order.** As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtor has complied in all material respects with the Bidding Procedures Order. The Debtor and its professionals have adequately and appropriately marketed the Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtor's fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest, and prospective buyers were afforded a reasonable and fair opportunity to bid for the Assets.

K.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Assets.  The Debtor conducted the sale process without collusion and in accordance with the Bidding Procedures.

L.      The Bidding Procedures Order is incorporated herein by reference.

M.      Based on its last bid made in open court on April 14, 2023, the Buyer is the designated Successful Bidder, and the Purchase Agreement is designated the Successful Bid for the Assets enumerated therein in accordance with the Bidding Procedures Order.  The Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and entering into the Purchase Agreement, and the Sale Transaction and the Purchase Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

N.      The Backup Buyer is designated the Next-Highest Bidder, and the Backup Buyer's last bid made in open court on April 14, 2023 is designated the Next-Highest Bid for the Assets. The Backup Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of this Court in submitting the Next-Highest Bid.  In the event the sale to the Successful Bidder does not close on the Closing Date (or such later date as agreed upon by the Debtor and Buyer, in consultation with the Committee), the Debtor shall be authorized but not directed to document the Next-Highest Bid in an acceptable form of purchase agreement with the Backup Buyer.

O.      **Business Judgment.** The Purchase Agreement, including the form and total consideration to be realized by the Debtor under the Purchase Agreement, (a) constitutes the highest or otherwise best offer received by the Debtor for the Assets, (b) is fair and reasonable,

(c) is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest, and (d) unless the Sale and the Sale Transaction are concluded expeditiously, recoveries to creditors may be diminished.

P.      The Debtor's determination that the consideration provided by the Buyer under the Purchase Agreement constitutes the highest or otherwise best offer for the Assets is reasonable and constitutes a valid and sound exercise of the Debtor's business judgment.

Q.      The Next-Highest Bid (a) constitutes the next highest or best offer received by the Debtor for the Assets after the Purchase Agreement, (b) is fair and reasonable, and (c) is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

R.      The Debtor's determination that the consideration provided by the Backup Buyer under the Next-Highest Bid constitutes the next highest or otherwise best offer for the Assets after the Purchase Agreement is reasonable and constitutes a valid and sound exercise of the Debtor's business judgment.

S.      Consistent with its fiduciary duties, the Debtor has demonstrated good, sufficient and sound business reasons and justifications for entering into the Sale Transaction and the performance of its obligations under the Purchase Agreement, including, but not limited to, the fact that the consideration provided by the Buyer under the Purchase Agreement will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, including a separate liquidation of the Assets.

T.      **Corporate Authority.** Subject to entry of this Order, the Debtor (a) has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (b) has all of the necessary corporate power and authority to consummate the transactions contemplated by the Purchase Agreement or the Next-Highest Bid,

including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, (c) has taken all corporate action necessary to authorize and approve the Purchase Agreement and the Next-Highest Bid, and the consummation by the Debtor of the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, and (d) subject to entry of this Order, needs no consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Purchase Agreement or this Order, to consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts.

U.      **Good Faith.** The sale process conducted by the Debtor, the Buyer, and the Backup Buyer, including, without limitation, the Auction, which was conducted in accordance with the Bidding Procedures and the Bidding Procedures Order, and continued in open Court on April 14, 2023, and the negotiation of the Purchase Agreement, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest.  Neither the Debtor, the Buyer, nor the Backup Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any person or entity in connection therewith.

V.      The Debtor, the Buyer, and the Backup Buyer have complied, in good faith, in all respects with the Bidding Procedures Order and the Bidding Procedures.  The Debtor, and its management, board of directors, employees, agents, advisors, and representatives, and the Buyer and the Backup Buyer and their respective employees, agents, advisors, and representatives, each actively participated in the bidding process and in the Auction, and each acted in good faith and

without collusion or fraud of any kind.  The Buyer and the Backup Buyer subjected their respective bids to competitive bidding in accordance with the Bidding Procedures and the Buyer was designated the Successful Bidder and the Backup Buyer was designated the Next-Highest Bidder for the Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

W.    The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar bankruptcy and non-bankruptcy law in respect of the Sale Transaction, each term of the Purchase Agreement (and any ancillary documents executed in connection therewith), and each term of this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  Neither the Debtor nor the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtor was free to deal with any other party interested in buying or selling some or all of the Assets on behalf of the Debtor's estate.  The protections afforded by Bankruptcy Code section 363(m) are integral to the Sale Transaction and the Buyer would not consummate the Sale Transaction without such protections.  The Buyer is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction in accordance with the terms of the Purchase Agreement and as set forth in this Order.

X.    The form and total consideration to be realized by the Debtor under the Purchase Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Assets.

Y.    Neither the Buyer nor any of its affiliates, officers, directors, managers, shareholders, members, or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined under section 101(31) of the Bankruptcy Code.  No common identity

of directors, managers, controlling shareholders, or members exists between the Debtor and the Buyer.

Z.    **No Fraudulent Transfer.** The consideration provided by the Buyer for the Assets pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Assets, (c) will provide a greater recovery for the Debtor's creditors and estate than would be provided by any other practical available alternative, and (d) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable law, including, without limitation, under the laws of the United States, and each State, territory, possession, and the District of Columbia or any other applicable jurisdiction with laws similar to the foregoing, including, without limitation, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act.

AA.    The Purchase Agreement was not entered into, and neither the Debtor nor the Buyer has entered into the Purchase Agreement or proposes to consummate the Sale Transaction, for the purpose of (a) escaping liability for any of the Debtor's debts or (b) hindering, delaying, or defrauding the Debtor's present or future creditors, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any State, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

BB.    **Free and Clear.** The transfer of the Assets to the Buyer will be a legal, valid, and effective transfer of the Assets, and will vest the Buyer with all right, title, and interest of the Debtor to the Assets free and clear of all claims (including, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), Liens (including, without limitation, any statutory lien on real and personal property and any and all

"liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, obligations, rights, and encumbrances relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, the following: any and all acts or omissions, agreements, all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income, or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff (except for setoff exercised prior to the Petition Date), rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, employee benefit rights and claims, wage claims, pension rights and claims, tax claims, assessments, assertions, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of licensees under section 365(n) of the Bankruptcy Code or any similar statute, the costs and expenses of the Debtor's estate, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income, or other exercise of any attributes of ownership) and all other matters of any kind and nature, any derivative, vicarious, transferee or successor liability claims, and any other rights, claims or causes of action, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, senior or subordinated, legal or equitable, whether arising prior to or subsequent to the commencement of the Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories arising under or out of, in connection with, or in any way related to the Debtor, any of the Assets, the Debtor's interest in the Assets, the operation of the Debtor's business before the Closing, or the transfer of the Debtor's interest in the Assets to Buyer (all of the foregoing, including Excluded Liabilities, but excluding Assumed Liabilities and Permitted Liens, collectively being referred to in this Order as "Claims"). All such Claims will attach to the proceeds received by the Debtor with the same priority, validity, force and effect as such Claims now have in the Assets, subject to any claims and defenses the Debtor may possess with respect thereto.

CC.    The Debtor, to the extent permitted by applicable law, may transfer the Assets free and clear of all Claims, including, without limitation, rights or claims based on any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

DD.    Those (a) holders of Claims and (b) non-Debtor parties to the Assigned Contracts, in each case who did not object or who withdrew their objections to the Motion, are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Those (a) holders of Claims, and (b) non-Debtor parties to the Assigned Contracts, in each case who did object, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

EE.    The Debtor has, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

FF.    The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, (a) if the transfer of the Assets were not free and clear of all Claims, or (b) if the Buyer would, or in the future could, be liable for or subject to any such Claims.

GG.    The Buyer will not consummate the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, unless this Court expressly orders that none of the Buyer, its respective affiliates, its respective present or contemplated members or shareholders, or the Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff (except for setoff exercised prior to the Petition Date), or otherwise, directly or indirectly, any Claims.

HH.    Not transferring the Assets free and clear of all Claims would adversely impact the Debtor's efforts to maximize the value of its estate, and the transfer of the Assets other than pursuant to a transfer that is free and clear of all Claims would be of substantially less benefit to the Debtor's estate.

II.    Neither the Buyer nor any of its affiliates are a mere continuation of the Debtor or its estate, there is no continuity or common identity between the Buyer, the Debtor, or any of their respective affiliates, and there is no continuity of enterprise between the Buyer, the Debtor, or any of their respective affiliates.  Neither the Buyer nor any of its affiliates are a successor to the Debtor or its estate and none of the transactions contemplated by the Purchase Agreement, including,

without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates with or into the Debtor.

JJ.    Without limiting the generality of the foregoing, and other than as may be set forth in the Purchase Agreement, none of the Buyer, its affiliates, the present or contemplated members or shareholders of the Buyer and its affiliates, or the Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state or local income tax liabilities, that the Debtor may incur in connection with consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts, or that the Debtor has otherwise incurred prior to the consummation of the transactions contemplated by the Purchase Agreement.

KK.    **Validity of Transfer.** The consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Purchase Agreement.

LL.    The Assets constitute property of the Debtor's estate and good title to the Assets is vested in the Debtor's estate within the meaning under section 541(a) of the Bankruptcy Code. The Debtor is the sole and lawful owner of the Assets.

MM.    The Purchase Agreement has been duly and validly executed and delivered by the Debtor and, subject to the terms of the Purchase Agreement, shall constitute valid and binding

obligations of the Debtor, enforceable against the Debtor in accordance with its terms. The Purchase Agreement, the Sale Transaction, and the consummation thereof shall be specifically enforceable against and binding upon the Debtor, its successor, and any chapter 7, chapter 11, or any other trustees, examiners, "responsible persons", liquidating or litigation trusts, liquidating or litigation trustees, or other fiduciaries appointed in the Chapter 11 Case, and shall not be subject to rejection or avoidance by the foregoing parties or any other person.

### Assigned Contracts

NN.    The assumption and assignment of the Assigned Contracts pursuant to the Assumption and Assignment Notice, the terms of this Order, and the Purchase Agreement is integral to the transactions contemplated by the Purchase Agreement. Such assumption and assignment is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest, and represents a reasonable exercise of the Debtor's sound and prudent business judgment.

OO.    Pursuant to the terms of the Purchase Agreement and this Order, on or before the Closing Date, as applicable pursuant to the terms of this Order, the Buyer shall have, except as otherwise provided in the Purchase Agreement or this Order, or as otherwise expressly agreed to between the Debtor or the Buyer, as applicable, and such counterparty: (a) cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (b) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (c) provided adequate assurance of future performance

under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

PP.     If the Buyer designates a Transition Contract or other Contract as an Assigned Contract, pursuant to the terms of the Purchase Agreement, the Debtor shall serve a notice (the "Assignment Notice") on the applicable counterparties to such Contract notifying such counterparties of the Cure Amount with respect to such Contract and the Debtor's intention to assume and assign such Contract.  The Assignment Notice shall provide the counterparties to such Contracts with ten (10) business days to object (the "Assignment Objection Deadline"), in writing, which objections may only relate to the assumption and assignment of its Contract, as well as to the Buyer's ability to provide adequate assurance of future performance, with such objection to be served upon the Debtor, the Buyer, and the Committee.  If the counterparties, the Debtor, and the Buyer, in consultation with the Committee, are unable to reach a consensual resolution with respect to the objection, the Debtor will seek an expedited hearing before this Court to approve the assumption and assignment.  If no written objection is timely received by the Debtor, the Buyer, and the Committee by the applicable Assignment Objection Deadline, then the applicable Contract shall be deemed an Assigned Contract pursuant to the terms of the Purchase Agreement without further notice to or action, order or approval of this Court, subject to the payment of the applicable Cure Costs (or such lesser amounts agreed to by the counterparties thereto, *provided, however*, if such lesser amount is agreed to, the remaining amount of any claim shall be waived and not treated as an unsecured claim against the Debtor's estate).

QQ.     **Compelling Circumstances for an Immediate Sale.** To maximize the value of the Assets, it is essential that the transactions contemplated by the Purchase Agreement occur within the time constraints set forth therein.  Time is of the essence in consummating the transactions

contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts.  Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

SS.    The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale Transaction and the assumption and assignment of the Assigned Contracts prior to, and outside of, a chapter 11 plan because, among other things, the Debtor's estate will suffer irreparable harm if the relief requested in the Motion is not granted on an expedited basis. The transactions contemplated by the Purchase Agreement neither impermissibly restructure the rights of the Debtor's creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtor, and therefore, do not constitute a *sub rosa* plan.

TT.    The legal and factual bases set forth in the Motion and the Sale Declarations filed in support thereof and presented at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted and approved as provided herein, and the Debtor's entry into and performance under, and in respect of, the Purchase Agreement attached hereto as **Exhibits 1 and 2**, and the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, the ancillary agreements, and the assumption and assignment of the Assigned Contracts is authorized and approved.  The Backup Buyer is approved, and the Next-Highest Bid submitted by the Backup Buyer is likewise approved and authorized as provided herein.

2.     Any objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or resolved, including the objection filed by: (i) Pearsanta, Inc. [Docket No. 236], (ii) Seraph Investments II, LLC and Seraph Diassess, LLC [Docket No. 238], (iii) the Official Committee of Unsecured Creditors [Docket No. 239], (iv) Jacob Erwin [Docket No. 254], and (v) David Gross [Docket No. 264] (collectively, the "Objections"), and all reservation of rights included in such objections and responses, are overruled on the merits and denied with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief granted herein, for all purposes, including for purposes of sections 363(f)(2), 365(e)(1), and 365(e)(2) of the Bankruptcy Code.  Each person or entity which filed an Objection (the "Objecting Parties") is bound to the terms of this Order.

### A.    Approval of the Purchase Agreement

3.     The Purchase Agreement, all ancillary documents executed in connection therewith (including the Transition Services Agreement), the transactions contemplated thereby, including, without limitation, the Sale Transaction, and the assumption and assignment of the Assigned Contracts, and all the terms and conditions thereof, are approved.  The failure specifically to include any particular provision of the Purchase Agreement or any ancillary agreement in this Order shall not diminish or impair the effectiveness of such provision; this Court hereby authorizes and approves the Purchase Agreement and any ancillary agreement in its entirety.

4.     The Debtor and its respective officers, employees, and agents are authorized and directed to take any and all actions necessary, appropriate, or reasonably requested by the Buyer to perform, consummate, implement, and close the Sale Transaction, including, without limitation, (a) the Sale to the Buyer of all Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order, and (b) execution, acknowledgment and delivery of such

30296597.1

19

deeds, assignments, conveyances, and other assurance, documents and instruments of transfer, and any action for purposes of assigning, transferring, granting, conveying, and confirming to the Buyer, or reducing to possession, the Assets, all without further order of this Court. The Debtor is further authorized to pay, without further order of this Court, whether before, at, or after the Closing Date, any expenses or costs that are required to be paid by the Debtor under the Purchase Agreement and any ancillary agreement, this Order, or the Bidding Procedures Order, in order to consummate the Sale Transaction or perform their obligations under the Purchase Agreement.

5.      Subject to the terms, conditions, and provisions of this Order, all persons and entities including each of the Objecting Parties are hereby forever prohibited, enjoined and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtor to sell and transfer the Assets to the Buyer free and clear of all Claims in accordance with the terms of the Purchase Agreement and this Order and (b) with the ability of the Buyer to acquire, take possession of, use, and operate the Assets in accordance with the terms of the Purchase Agreement and this Order.

6.      All persons and entities, including, without limitation, the Debtor, the Debtor's estate, each of the Objecting Parties, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims against the Debtor or the Assets, arising under or out of, in connection with, or in any way relating to, the Debtor, the Assets, the operation or ownership of the Assets by the Debtor prior to the Closing Date, or the Sale Transaction, are hereby prohibited, forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against the Buyer, its affiliates, successors, assigns, or property, or the Assets, including,

without limitation, taking any of the following actions with respect to any Claims:  (a) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Buyer, its affiliates, successors, assigns, Assets, and/or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, its affiliates, successors, assigns, Assets, and/or properties; (c) asserting or prosecuting any cause of action, any process or other act seeking to collect, offset, setoff (except for setoff exercised prior to the Petition Date), or recover on account of any Claims against the Buyer, its affiliates, successors, assigns, assets (including the Assets), and/or properties; (d) creating, perfecting, or enforcing any Claim against the Buyer, its affiliates, any of their respective successors, assigns, Assets, and/or properties; (e) asserting a Claim as a setoff (except for setoff exercised prior to the Petition Date) or right of subrogation of any kind against any obligation due against the Buyer, its affiliates, or any of their respective successors or assigns; or (f) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Debtor's ability to transfer the Assets to the Buyer in accordance with the terms of this Order and the Purchase Agreement.  No such persons or entities shall assert or pursue any such Claim against the Buyer or its affiliates, successors, or assigns nor shall such persons or entities interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to any such Claim, or based on any act or omission of the Debtor, including in the Chapter 11 Case.

7.    The Sale of the Assets to the Buyer under the Purchase Agreement constitutes a transfer for reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and applicable law, including, without limitation, the laws of each jurisdiction in which the

Assets are located, and the Sale of the Assets to the Buyer and the Sale Transaction may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act and any other applicable law.  The Sale and the Sale Transaction shall not be avoided or rejected by any person or entity, and costs or damages shall not be imposed or awarded against the Buyer under section 363(m) or any other provision of the Bankruptcy Code or applicable State or other law.

### B.    Transfer of the Assets Free and Clear

8.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be sold free and clear of all Claims, with all such Claims to attach to the proceeds of the Sale Transaction to be received by the Debtor with the same validity, force, priority, and effect which they now have as against the Assets, subject to any claims and defenses the Debtor may possess with respect thereto; *provided*, *however*, that setoff rights (except for setoff exercised prior to the Petition Date) with respect to Claims will be extinguished to the extent there is no longer mutuality after the consummation of the Sale Transaction.

9.    At Closing, all of the Debtor's right, title, and interest in and to, and possession of, the Assets shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code free and clear of any and all Claims.  Such transfer shall constitute a legal, valid, binding, and effective transfer of, and shall vest the Buyer with good and marketable title to, the Assets.  All person or entities, presently or on or after the Closing Date, in possession of some or all of the Assets are authorized and directed to surrender possession of the Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

30296597.1

10.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Sale Transaction.  Each and every federal, State, and county governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction.

11.     The Debtor is authorized and directed to execute such documents as may be necessary to release any Claims of any kind against the Assets as such Claims may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, *lis pendens* or other documents or agreements evidencing Claims against or in the Assets shall not have delivered to the Debtor prior to the Closing of the Sale Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Assets, (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets, (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims against the Buyer and the applicable Assets, (c) the Debtor's creditors and the holders of

any Claims are authorized to execute such documents and take all other actions as may be necessary to terminate, discharge, or release their Claims in the Assets, and (d) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all such Claims with respect to the Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office, and such agencies, departments, and offices are authorized to accept this Order for filing or recording. Notwithstanding the foregoing, the provisions of this Order authorizing the Sale and assignment of the Assets free and clear of Claims shall be self-executing, and neither the Debtor nor the Buyer shall be required to (but may) execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate or implement the provisions of this Order.

12.    To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyer with respect to the Assets as of the Closing Date.  To the extent the Buyer cannot operate under any such license, permit, registration, and governmental authorization or approval in accordance with the previous sentence, such licenses, permits, registrations, and governmental authorizations and approvals shall be in effect while the Buyer, with assistance from the Debtor (and at the Buyer's sole cost and expense), works promptly and diligently to apply for and secure all necessary government approvals for new

issuance of such licenses, permits, registrations, and governmental authorizations and approvals to the Buyer.

13.    No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets on account of the filing or pendency of the Chapter 11 Case or the consummation of the Sale Transaction to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

### C.    No Successor or Transferee Liability

14.    Upon the Closing Date, except as provided in the Purchase Agreement, the entrance of this Order and the approval of the terms of the Purchase Agreement shall mean that the Buyer (and any of its affiliates, successors, or assigns), as a result of any action taken in connection with the Purchase Agreement, the consummation of the transactions contemplated thereby, including, without limitation, the Sale Transaction, and the assumption and assignment of the Assigned Contracts, or the transfer or operation of the Assets, shall not be deemed to:  (a) be a legal successor to the Debtor; (b) have, *de facto*, or otherwise, merged or consolidated with or into the Debtor; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtor or the enterprise of the Debtor, including, in the case of each of (a)-(c), without limitation, (i) within the meaning of any foreign, federal, state or local revenue, county debt collection, insurance,  or pension law, rule or regulation, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the  WARN Act (29  U.S.C.  §§ 2101,  *et seq.*) ("WARN"), Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended),

the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* or (ii) in respect of (1) any environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, or (2) any liabilities, penalties, costs, debts, or obligations of or required to be paid by the Debtor for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations).

15.     Without limiting the generality of the foregoing, and except as otherwise provided in the Purchase Agreement and this Order, neither the Buyer nor any of its affiliates shall have any responsibility for (a) any liability or other obligation of the Debtor related to the Assets or (b) any Claims against the Debtor or any of their predecessors or affiliates. By virtue of the Buyer's purchase of the Assets, neither the Buyer nor any of its affiliates shall have any liability whatsoever with respect to the Debtor's (or its predecessors' or affiliates') respective businesses or operations or any of the Debtor's (or its predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental (including, but not limited to CERCLA), successor or transferee liability, *de facto* merger or substantial continuity, labor and employment (including, but not limited to, WARN and ERISA), pension, tax, product liability law, rule, doctrine or regulation, or other law, rule, doctrine, or regulation, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of the Debtor's employment agreements or health or benefit plans, any settlement or

injunction or any liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing or such later time as the Buyer is assigned any Assigned Contract (collectively, with the potential claims set forth in preceding paragraph, "Successor or Transferee Liability").  The Buyer would not have entered into the Purchase Agreement and would not consummate the Sale Transaction including acquiring the Assets but for the foregoing protections against Successor or Transferee Liability.

16.     None of the Buyer or its affiliates, successors, assigns, equity holders, employees, or professionals shall have or incur any liability to, or be subject to any action by the Debtor or any of its estate, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement and the ancillary agreements, and the entry into and consummation of the Sale of the Assets, except as expressly provided in the Purchase Agreement, including in the definition of Excluded Assets, and this Order.

17.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtor that are approved by this Order, including, without limitation, the Purchase Agreement and the ancillary agreements, and the Sale Transaction.

### D.     Good Faith; Arm's Length Sale

18.     The Purchase Agreement and the ancillary agreements have been negotiated and executed, and the transactions contemplated thereby, including, without limitation, the Sale Transaction, the assumption and assignment of the Assigned Contracts, are and have been undertaken, by the Debtor, the Buyer, and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement or the ancillary agreements, and shall not permit the unwinding of the

30296597.1

Sale Transaction.  The Buyer is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections under section 363(m) of the Bankruptcy Code.

19.    Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the ancillary agreements or the transactions contemplated thereby, including, without limitation, the Sale Transaction, to be avoided, or for costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Buyer for the Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Purchase Agreement, the ancillary agreements or the Sale Transaction.

### E.    Assumption and Assignment of the Assigned Contracts

20.    Except as otherwise expressly provided in the Purchase Agreement or this Order, upon the Closing Date, pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Debtor is authorized to (a) assume each of the Assigned Contracts and assign the Assigned Contracts, to the Buyer free and clear of all Claims and (b) execute and deliver to the Buyer such documents or other instruments as may be reasonably requested by the Buyer to assign and transfer the Assigned Contracts.

21.    To the extent any non-Debtor party to an Assigned Contract, or Transition Contract or other Contract later designated by the Buyer as an Assigned Contract, failed to timely object to the proposed Cure Costs, such Cure Costs shall be deemed to be finally determined in the amount(s) listed on the Assumption and Assignment Notice and any such non-Debtor party shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time, *provided, however*, that a counterparty to an Assigned Contract shall not be barred

from seeking additional amounts on account of any defaults occurring between the deadline to object to Cure Costs and the assumption of the contract.  In the event of a dispute regarding assumption and assignment or Cure Costs of any executory contract or unexpired lease proposed to be an Assigned Contract pursuant to a timely filed objection, the assumption and assignment of such executory contract or unexpired lease, and payment of any applicable Cure Costs, shall be made upon (a) the entry of an order of this Court resolving any such dispute and upon the election of the Buyer to retain such executory contract or unexpired lease as an Assigned Contract, or (b) the consensual resolution of such dispute as may be agreed by the Buyer and such counterparty and, solely with respect to disputes regarding Cure Costs, the Debtor.

22.     The non-Debtor party to an Assigned Contract, or Transition Contract or other Contract later designated by the Buyer as an Assigned Contract, is forever bound by the applicable Cure Costs (or such lesser amount agreed to by such party, *provided, however*, if such lesser amount is agreed to, the remaining amount of any claim shall be waived and not treated as an unsecured claim against the Debtor's estate), which are the sole amounts necessary to be paid upon assumption and assignment of the Assigned Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code.  Upon payment of the Cure Costs as provided herein and in the Purchase Agreement, the non-Debtor party to an Assigned Contract is hereby enjoined from taking any action against the Debtor or the Buyer with respect to any claim for cure under the Assigned Contract.  All Cure Costs, defaults or other obligations of the Debtor under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the payment of the applicable Cure Costs (or such lesser amount agreed to by such party, *provided, however*, if such lesser amount is agreed to, the remaining amount of any

claim shall be waived and not treated as an unsecured claim against the Debtor's estate) on Closing

or as soon thereafter as reasonable practicable and the Buyer shall have no liability for any defaults,

claims, or liabilities arising or accruing prior to Closing.

23.     Upon the payment of the Cure Costs (or such lesser amount agreed to by the non-Debtor party to an Assigned Contract), if any, the Assigned Contracts shall remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.   The Cure Costs shall not be subject to further dispute or audit, including, without limitation, any based on performance prior to the Closing Date, irrespective of whether such Assigned Contract contains an audit clause.  After the payment of the Cure Costs (or such lesser amount agreed to by the non-Debtor party to an Assigned Contract, *provided, however*, if such lesser amount is agreed to, the remaining amount of any claim shall be waived and not treated as an unsecured claim against the Debtor's estate), following the Closing Date the Debtor shall have no further liabilities to the counterparties to the Assigned Contracts.

24.     Upon payment of the applicable Cure Costs (or such lesser amounts agreed to by the non-Debtor parties to the Assigned Contracts, *provided, however*, if such lesser amount is agreed to, the remaining amount of any claim shall be waived and not treated as an unsecured claim against the Debtor's estate) and the Debtor's assumption and assignment of the Assigned Contracts under the provisions of this Order, no default shall exist under any Assigned Contract and no counterparty to any such Assigned Contract shall be permitted to declare or enforce, or otherwise take action against the Buyer or the Debtor based on, a default by the Debtor that relates to the period prior to the effective date of such assumption and assignment, including failure to

perform any obligations under the relevant Assigned Contract, or that relates to any of the Debtor's financial condition, any change in control, or the Chapter 11 Case.

25.    Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract (including the granting of a lien therein) or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, declare a default, condition on renewal or extension, or modify any term or condition upon assignment, sublease, or change of control of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms and conditions, or of the Debtor's and the Buyer's right to enforce every term and condition thereof.

26.    Any party that may have had the right to consent to the assignment of an Assigned Contract is deemed to have consented to such assignment, including for purposes of sections 365(c)(1)(B) and 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise, if such party failed to object to the assumption and assignment of such Assigned Contract.

27.    Each Assigned Contract constitutes an executory contract or unexpired lease under the Bankruptcy Code and all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assigned Contracts have been, or will be, satisfied.  Upon the Buyer's assumption of the Assigned Contracts in accordance with the terms hereof, in accordance with sections 363 and 365 of the Bankruptcy Code, (a) the Buyer shall be fully and irrevocably vested with all rights, title and interest of the Debtor under the Assigned Contracts, (b) the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts, and (c) as of the Closing, the Debtor shall

be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

28.     Upon payment of the applicable Cure Costs (or such lesser amounts agreed to by the non-Debtor parties to the Assigned Contracts, *provided, however*, if such lesser amount is agreed to, the remaining amount of any claim shall be waived and not treated as an unsecured claim against the Debtor's estate), the requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Assigned Contracts based on the Buyer's evidence of its financial condition and wherewithal and without any further action by the Buyer, including, but not limited to, any other or further deposit.  The Buyer has demonstrated adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

29.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Debtor or the Buyer as a result of the assumption and assignment of the Assigned Contracts.  Subject to the terms of the Purchase Agreement, the validity of the transactions contemplated therein, including, without limitation, the Sale Transaction, shall not be affected by any dispute between the Debtor and the non-Debtor party to an Assigned Contract regarding the payment of any amount.  Upon assignment to the Buyer, the Assigned Contracts shall be valid and binding, in full force and effect and enforceable by the Buyer in accordance with their respective terms.

30.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred, estopped and permanently enjoined from raising or asserting against the Debtor or the Buyer any assignment fee, default, breach or claim of pecuniary loss, penalty, or condition to assignment, arising under or related to the

30296597.1

Assigned Contracts existing as of and including the Closing Date under the Purchase Agreement or arising by reason of the consummation of the transactions contemplated therein, including, without limitation, the Sale Transaction.

31.     All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Debtor or the Buyer for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Assets.

32.     As set forth in paragraph PP above, if the Buyer designates a Transition Contract or other Contract as an Assigned Contract, pursuant to the terms of the Purchase Agreement, the Debtor shall serve an Assignment Notice on the applicable counterparties to such Contracts notifying such counterparties of the Debtor's intention to assume and assign such Contract. Any objections to the Assignment Notice, which may only relate to the assumption and assignment of such Contract, as well as the Buyer's ability to provide adequate assurance of future performance, must be filed and served no later than the Assignment Objection Deadline. If the counterparties, the Debtor, and the Buyer, in consultation with the Committee, are unable to reach a consensual resolution with respect to any objection, the Debtor shall seek an expedited hearing before this Court to approve the assumption and assignment. If no written objection is timely received by the Debtor, the Buyer, and the Committee by the applicable Assumption Objection Deadline, then the applicable Contract shall become an Assigned Contract pursuant to the terms of the Purchase Agreement without further notice to or action, order or approval of this Court.

33.     Notwithstanding anything to the contrary herein, the respective rights of the Debtor, Buyer, Backup Buyer, Real Staffing Group ("RSG"), Creative Management Services LLC

(d/b/a MC$^2$) ("<u>CMS</u>"), Sierra Solutions Group ("<u>SSG</u>"), and Inspired Vision Investments LLC ("<u>IVI</u>," and collectively with RSG,CMS, and SSG, the "<u>Objecting Counterparties</u>") with respect to the Objecting Counterparties' informal objections to Cure Amounts listed in the Assumption and Assignment Notice [Docket No. 187], and PLITEK, L.L.C ("<u>PLITEK</u>"),Norwalt Design Inc., and United Parcel Service, Inc. ("<u>UPS</u>") and Coyote Logistics, LLC ("<u>Coyote Logistics</u>"), with respect to their respective objections [Docket Nos. 220, 226, and 243], are fully reserved.  At this time, none of the Objecting Counterparties' Contracts nor Contracts of PLITEK, UPS or Coyote Logistics constitute Assigned Contracts.

34.     Notwithstanding anything to the contrary in this Order, or any notice related thereto, the Cigna Employee Benefits Agreements (as defined in the Objection of Cigna to Notice of (I) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (II) Cure Amounts [Docket No. 222] (the "<u>Cigna Objection</u>")) shall not be assumed and assigned to Buyer as part of the Sale.  This moots the Cigna Objection.

### F.     Approval of the Backup Buyer

35.     The Backup Buyer is hereby approved, and the Next-Highest Bid submitted by the Backup Buyer is hereby approved and authorized.  In accordance with the Bidding Procedures, the Next-Highest Bid submitted by the Backup Buyer shall remain binding on the Backup Buyer until the Closing Date.  If the Buyer fails to close on the Closing Date (the "<u>Backup Buyer Date</u>"), the Debtor, in consultation with the Consultation Parties, and upon written notice to the Backup Buyer within one (1) business day after the Backup Buyer Date, may designate the Backup Buyer as the Successful Bidder.

36.     In the event the Debtor designates the Backup Buyer as the Successful Bidder, the Debtor is authorized, but not directed to document the Next-Highest Bid in an acceptable form of

purchase agreement (the "Backup Purchase Agreement") with the Backup Buyer. In such case, the Debtor shall, as soon as practicable, file with this Court for entry by this Court upon certification of counsel (with a copy concurrently provided by email to respective counsel to (i) the Buyer, (ii) the U.S. Trustee, and (iii) the Committee): (a) the proposed sale order with respect to the Sale to the Backup Buyer; (b) the proposed Backup Purchase Agreement; and (c) a notice (w) advising that the Purchase Agreement with the Buyer has not been consummated, (x) advising that the Backup Buyer has become the Successful Bidder pursuant to this Order, (y) advising of the Closing Date of the transaction with the Backup Buyer, and (z) seeking entry of the proposed sale order approving the Sale to the Backup Buyer.

37.     In the event the Debtor designates the Backup Buyer as the Successful Bidder, the Debtor shall, as soon as practicable, file and serve an assignment notice (the "Backup Assignment Notice") on the applicable counterparties to those Contracts designated by the Backup Buyer as Contracts to be assumed and assigned to the Backup Buyer notifying such counterparties of the Debtor's intention to assume and assign such Contracts to the Backup Buyer (the "Backup Assigned Contracts"). Any objections to the Backup Buyer's ability to provide adequate assurance of future performance must be filed and served no later than five (5) calendar days from the date of the filing and service of the Backup Assignment Notice (the "Backup Assumption Objection Deadline"). If the counterparties, the Debtor, and the Backup Buyer, in consultation with the Committee, are unable to reach a consensual resolution with respect to any objection, the Debtor shall seek an expedited hearing before this Court to approve the assumption and assignment. If no written objection is timely received by the Debtor, the Backup Buyer, and the Committee by the applicable Backup Assumption Objection Deadline, then the applicable Contract shall become an

Assigned Contract pursuant to the terms of the Backup Purchase Agreement without further notice to or action, order or approval of this Court.

### G.    Related Relief

38.    Except as expressly provided in the Purchase Agreement, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtor or its estate from asserting, or otherwise impair or diminish, any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim set forth in or in respect of any of the Excluded Assets or Excluded Liabilities.

39.    This Order and the Purchase Agreement shall be binding in all respects upon all pre-petition and post-petition creditors of the Debtor, all equity or other interest holders of the Debtor, all non-Debtor parties to the Assigned Contracts, the Committee, any other committee, all successors and assigns of the Debtor and its affiliates and subsidiaries, and any trustees, examiners, "responsible persons," liquidating or litigation trusts, liquidating or litigation trustees or other fiduciaries appointed in the Chapter 11 Case or upon a conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Purchase Agreement and the ancillary agreements and Sale Transaction shall not be subject to rejection or avoidance under any circumstances by any party.  If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Buyer hereunder shall remain effective and, notwithstanding such dismissal, conversion or appointment of any trustee, shall remain binding on parties in interest including any trustee.  Any plan for the Debtor and any order confirming such plan shall provide that this Order and the rights and protections granted to Buyer hereunder shall remain effective and shall remain binding on all parties in interest.

40.     This Court shall retain jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement and all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or which has been assigned by the Debtor to the Buyer, and to enter any orders, as appropriate, pursuant to sections 105(a), 363 or 365 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Assets to the Buyer.

41.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in consultation with the Committee and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement that has a material adverse effect on the Debtor's estate shall be subject to further Court approval.

42.     The Debtor shall promptly deliver any communications it receives from Buyer pursuant to the Purchase Agreement to the Committee, including the accounting to be delivered pursuant to section 4.1(a) of the Purchase Agreement, the Allocation pursuant to section 4.4 of the Purchase Agreement, and any notice delivered pursuant to sections 1.5(d), 8.5(b), and 8.5(c) of the Purchase Agreement. The Debtor shall consult with the Committee with respect to the Allocation and the Debtor's rights under section 4.4 of the Purchase Agreement and continue to provide the Committee access to non-privileged documents upon the Committee's written request and on reasonable notice to the Debtor pursuant to the Debtor's access rights to the books and records under the Purchase Agreement.

43.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited

to Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly: (a) the terms of this Order shall be immediately effective and enforceable upon its entry and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply; (b) the Debtor is not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtor and the Buyer may, each in its discretion and without further delay, take any action and perform any act authorized under this Order.

44.    The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code, to give any notice permitted by the Purchase Agreement or to enforce any of its remedies under the Purchase Agreement or any other sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

45.    The provisions of this Order are non-severable and mutually dependent.

46.    To the extent there are any conflicts or inconsistencies with respect to any terms or provisions of the Purchase Agreement and this Order, the terms of this Order shall control.

47.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: April 19th, 2023
Wilmington, Delaware

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

30296597.1

38